United States District Court
Southern District of Texas

**ENTERED**

April 15, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

WALTER HINTON, JR.,          §
TDCJ #01839405,              §
                             §
            Petitioner,      §
                             §
v.                           §
                             §    CIVIL ACTION NO. H-16-1054
ERIC GUERRERO,[1] Director,  §
Texas Department of Criminal §
Justice – Correctional       §
Institutions Division,       §
                             §
            Respondent.      §

**MEMORANDUM OPINION AND ORDER**

Walter Hinton, Jr., has filed a Petition for a Writ of Habeas
Corpus By a Person in State Custody ("Original Petition") (Docket
Entry No. 1), challenging a conviction from Harris County, Texas,
for murder.  Director Bobby Lumpkin has filed Respondent's Answer
with Brief in Support ("Respondent's Answer") (Docket Entry
No. 35), arguing that Hinton is not entitled to relief under the
legal standard found in 28 U.S.C. § 2254(d).  Hinton was granted
permission to file additional claims challenging his conviction in
an "Amended" Petition for a Writ of Habeas Corpus by a Person in
State Custody ("Amended Petition") (Docket Entry No. 40).[2]  The

───────────────

[1]Bobby Lumpkin was the previous named respondent in this
action. Eric Guerrero has succeeded Lumpkin as Director of the
Texas Department of Criminal Justice – Correctional Institutions
Division.   Under Rule 25(d) of the Federal Rules of Civil
Procedure, Guerrero is automatically substituted as a party.

[2]The court uses the word "Petition" to refer to the collective
claims asserted by Hinton in the Original Petition and the Amended
Petition.

respondent then filed Respondent's Supplemental Answer with Brief in Support ("Respondent's Supplemental Answer") (Docket Entry No. 46). Hinton has filed Petitioner's Reply ("Petitioner's Reply") (Docket Entry No. 58) and Petitioner's Supplemental Reply (Docket Entry No. 59). After considering all of the pleadings, the state court record, and the applicable law, the court will dismiss this action for the reasons explained below.

## I.  Background

### A.  Factual Background

A jury in the 262nd District Court of Harris County, Texas, found Hinton guilty of murdering Robert Jones in Cause No. 1316867 and sentenced him to life in prison.[3] Hinton filed a direct appeal of his conviction.[4] An intermediate court of appeals rejected the arguments Hinton presented on appeal and affirmed the conviction in an unpublished opinion after setting forth the following facts based on the evidence presented at trial:

> On the evening of Friday August 12, 2011, [Hinton] attended a birthday party with his girlfriend at an apartment complex on Truxillo Street in south Houston, Harris County, Texas. [Hinton] received a phone call while he was at the party and answered it outside. [Hinton] returned to the apartment complaining that a dog had bitten him on the leg. [Hinton] was angry and asked who owned the dog.

---

[3]Judgment of Conviction by Jury, Docket Entry No. 33-4, pp. 51-52; see also Hinton v. State, No. 14-13-00116-CR, 2014 WL 1516151, at *1 (Tex. App.—Houston [14th Dist.] Apr. 17, 2014, pet. ref'd). For purposes of this Memorandum Opinion and Order all page numbers refer to the pagination imprinted at the top of the page by the court's Electronic Case Filing system.

[4]See Hinton, 2014 WL 1516151, at *1.

The complainant, Robert Jones, who lived and worked at the apartment complex, owned the dog. On that evening, he was sitting outside his office in the company of fellow residents. After learning that the dog belonged to the complainant, [Hinton] confronted him and gave him three options: (1) [Hinton] would call the police; (2) [Hinton] would shoot the dog; or (3) [Hinton] would take all the money in the complainant's pocket. The complainant replied that [Hinton] could shoot the dog.

[Hinton] contacted his wife and asked her to bring him his gun, a .380 semiautomatic handgun. [Hinton] left the apartment complex and met his wife at a gas station where she gave him the gun. [Hinton] returned to the apartment complex with the gun and found the complainant in the same general area of the apartment complex. He again complained about the dog and was largely ignored. To make his point, [Hinton] began firing the pistol his wife had brought him. Robert Floyd, an acquaintance of the complainant, was shot in the ankle. Cheyenne Johnson, the complainant's stepson, was shot in the stomach. The complainant was shot five times: twice in the chest, once in the hand, and twice in the thigh. He ultimately died from his wounds.

<u>Hinton,</u> 2014 WL 1516151, at *1.

## B.    The State Court Proceedings

Hinton was indicted on October 28, 2011, in Cause Number 1316867 for the murder of Jones.[5] On February 13, 2013, a jury in the 262nd District Court for Harris County, Texas, found Hinton guilty of murder as charged in the indictment and sentenced him to life in prison.[6] Hinton filed a direct appeal of his conviction.[7]

--------

[5]Indictment, Docket Entry No. 33-4, p. 45.

[6]Judgment of Conviction by Jury, Docket Entry No. 33-4, pp. 51-52; <u>see also Hinton,</u> 2014 WL 1516151, at *1; Verdict, Docket Entry No. 33-9, p. 17. The jury also found the allegations in Enhancement Paragraph One and Enhancement Paragraph Two of the indictment were true, and Hinton's sentence was enhanced as a habitual offender. <u>See</u> Docket Entry No. 33-9, p. 26.

[7]<u>See</u> Brief for Appellant, Docket Entry No. 34-11; <u>see also</u> <u>Hinton,</u> 2014 WL 1516151, at *1.

On April 17, 2014, the Fourteenth Court of Appeals affirmed Hinton's conviction, and on July 23, 2014, the Texas Court of Criminal Appeals refused his petition for discretionary review.[8]

On October 15, 2015, Hinton executed an Application for a Writ of Habeas Corpus Seeking Relief from Final Felony Conviction Under [Texas] Code of Criminal Procedure, Article 11.07 ("Original State Habeas Application").[9]  In the Original State Habeas Application Hinton claimed:

(1)   He was denied due process due to prosecutorial misconduct;

(2)   He was denied effective assistance of counsel on direct appeal;

(3)   He was denied due process due to trial court error; and

(4)   That there was no evidence to support his conviction.[10]

---

[8]See Hinton, 2014 WL 1516151, at *1.

[9]Original State Habeas Application, Docket Entry No. 33-1, pp. 6-23.  The Original State Habeas Application also included a Memorandum in Support of Applicant's Original Writ of Habeas Corpus (Docket Entry No. 33-1, pp. 24-42) and an Appendix (Docket Entry No. 33-1, pp. 43-53 and continued at Docket Entry No. 33-2, pp. 1-16).  "[U]nder Texas law the pleadings of pro se inmates, including petitions for state post-conviction relief, are deemed filed at the time they are delivered to prison authorities, not at the time they are stamped by the clerk of the court."  Richards v. Thaler, 710 F.3d 573, 578-79 (5th Cir. 2013).  Hinton does not indicate the date on which he submitted his Original State Habeas Application to prison officials for delivery to the Harris County District Clerk's Office, where it was stamped as received on October 26, 2015.  See Original State Habeas Application, Docket Entry No. 33-1, p. 6.  Using the date most favorable to Hinton, the court considers that his Original State Habeas Application was filed on the date he signed it - October 15, 2015.  See id. at 22.

[10]Original State Habeas Application, Docket Entry No. 33-1, pp. 11-18, 29-41.

-4-

On February 16, 2016, Hinton filed an amended Application for a Writ of Habeas Corpus Seeking Relief from Final Felony Conviction Under [Texas] Code of Criminal Procedure, Article 11.07 ("Amended State Habeas Application"), which asserted that trial counsel was ineffective for:

(1)  Failing to request a jury instruction on "concurrent causation";

(2)  Allowing the prosecution to call his wife, April Page;

(3)  Allowing the prosecution to call jailhouse informant Brandon Bridges;

(4)  Failing to interview "Moesha's sister's boyfriend";

(5)  Failing to request a jury instruction on the lesser included offense of aggravated assault;

(6)  Failing to argue mitigating circumstances during punishment; and

(7)  Failing to subpoena Terrell Robinson, the victim's son.[11]

The State Habeas Application[12] remained pending before the trial court until March 18, 2018, when the Texas Court of Criminal Appeals issued a mandate and ordered the Harris County District Clerk to respond.[13]  On June 27, 2018, the Texas Court of Criminal

_____

[11]Amended State Habeas Application, Docket Entry No. 33-2, pp. 48–53 and continued at Docket Entry No. 33-3, pp. 1–16.  The Amended State Habeas Application also included a Memorandum in Support of Applicant's Writ of Habeas Corpus (Docket Entry No. 33-3, pp. 28–53 and continued at Docket Entry No. 33-4, pp. 1–9).

[12]The court uses the phrase "State Habeas Application" to refer to the collective claims asserted by Hinton in the Original State Habeas Application, the Amended State Habeas Application, and the Second Amended Habeas Application (which will be discussed infra).

[13]See State's Proposed Findings of Fact, Conclusions of Law and Order Following Remand ("Findings and Conclusions"), Docket Entry No. 33-34, p. 33 ¶ 12 (recounting procedural history of Hinton's state habeas proceeding).

Appeals issued an order remanding the case to the trial court for fact finding on the following claim's asserted by Hinton in the state habeas proceeding: whether trial counsel was ineffective for failing to seek out and interview testimony from "Moeshe's sister's boyfriend" and the victim's son, Terrell Robinson; whether trial counsel was ineffective for failing to request a concurrent causation instruction or lesser-included offense instructions in the jury charge; and whether appellate counsel was deficient for failing to file a motion for new trial.[14] In the order, the Texas Court of Criminal Appeals stated that it had reviewed Hinton's "other claims" and found "them to be without merit."[15]

Upon remand, the state district court judge ordered Hinton's trial attorneys, Ms. Wendy Long, Mr. Charles Brown, and Ms. Sonya Chandler-Anderson, and his appellate attorney, Mr. Kurt Wentz, to submit affidavits responding to Hinton's claims of ineffective assistance of counsel.[16] Ms. Long, Mr. Brown, and Mr. Wentz

---

[14]See Ex parte Hinton, No. WR-WR-88,180-02, 2018 WL 3133970, at *1 (Tex. Crim. App. June 27, 2018); see also Action Taken for Application No. WR-88,180-02, Docket Entry No. 33-10.

[15]See Ex parte Hinton, 2018 WL 3133970, at *1, n.1.

[16]See State's Proposed Order for Filing Affidavit Following Remand, Docket Entry No. 33-11, pp. 2-4 (ordering Charles Brown to respond to questions from the court); State's Proposed Order for Filing Affidavit Following Remand, Docket Entry No. 33-17, pp. 7-10 (ordering Kurt Wentz to respond to questions from the court); State's Proposed Order for Filing Affidavit Following Remand, Docket Entry No. 33-17, pp. 12-14 (ordering Tara Long to respond to questions from the court); State's Proposed Order for Filing Affidavit Following Remand, Docket Entry No. 33-17, pp. 20-22 (ordering Sonya Chandler-Anderson to respond to questions from the court).

complied as ordered.[17]   Hinton filed a response to Wentz's and Long's Affidavits.[18]

On July 12, 2021, Hinton filed a second amended Application for a Writ of Habeas Corpus Seeking Relief from Final Felony Conviction Under [Texas] Code of Criminal Procedure, Article 11.07 ("Second Amended State Habeas Application"), asserting the two additional claims that his trial counsel rendered ineffective assistance for failing to object to the jury charge and for failing to call an expert witness.[19]

On February 23, 2023, the trial court adopted the State's Findings and Conclusions and recommended that relief be denied.[20] In relevant part, the state district court judge made the following findings of fact and conclusions of law:

### FINDINGS OF FACT

1.   The applicant, Walter Hinton, Jr., is confined pursuant to the judgment and sentence of the 262nd District Court of Harris County, Texas, in cause number 1316867, a jury having convicted him of murder.

2.   The jury assessed punishment at confinement for life in the Texas Department of Criminal Justice – Institutions Division.

---

[17]See Affidavit of Kurt B. Wentz ("Wentz Affidavit"), Docket Entry No. 33-34, pp. 44–47; Affidavit of Tara N. Long ("Long Affidavit"), Docket Entry No. 33-34, pp. 76–77; Affidavit of Charles A. Brown ("Brown Affidavit"), Docket Entry No. 33-34, p. 79.

[18]See Applicant's Objection to Appellate Attorney's (Kurt B. Wentz) Affidavit, Docket Entry No. 33-14; Opposition/Objections to Att. Tara N. Long Affidavit, Docket Entry No. 33-20.

[19]Second Amended State Habeas Application, Docket Entry No. 33-17, pp. 117, 122–125.

[20]Findings and Conclusions, Docket Entry No. 33-34, pp. 42, 31.

3.    Attorneys Tara N. Long, Sonya Chandler-Anderson, and Charles Brown represented the applicant at trial.

4.    The Fourteenth Court of Appeals affirmed the applicant's conviction. *Hinton v. State,* 14-13-00116-CR, 2014 WL 1516151 (Tex. App.—Houston [14th Dist.] Apr. 17, 2014, pet. ref'd) (mem. op., not designated for publication).

5.    Kurt Wentz represented the applicant on direct appeal.

6.    On October 27, 2015, the applicant filed an application for a writ of habeas corpus alleging (1) he was denied due process due to prosecutorial misconduct; (2) he was denied effective assistance of counsel on direct appeal; (3) he was denied due process due to trial court error; and (4) that there is no evidence to support his conviction. *Applicant's Writ at 6-13.*

7.    The State filed an answer on November 10, 2015.

8.    On November 11, 2015, the trial court, Judge Bradley presiding, designated the issue of whether the applicant was denied the effective representation of counsel on direct appeal as an issue that needed resolving.

9.    On November 11, 2015, the trial court, Judge Bradley presiding, ordered appellate counsel, Kurt Wentz, to file an affidavit responding to the applicant's claim.

10.   On February 29, 2016, the applicant filed a Motion for Leave to File an Amended Application.

11.   On February 29, 2016, the applicant filed an amended application alleging trial counsel was ineffective for (1) failing to request a jury instruction on "concurrent causation"; (2) allowing the prosecution to call the applicant's wife, April Page; (3) allowing the prosecution to call Brandon Bridges; (4) failing to interview "Moesha's sister's boyfriend"; (5) failing to request a jury instruction on the lesser included offense of aggravated assault; (6) failing to argue mitigating circumstances during punishment; and (7) failing to subpoena Terrell Robinson. *Applicant's Amended Writ Application at 6-15.*

12.   On March 28, 2018, the Texas Court of Criminal Appeals issued a mandate in the instant case and ordered the Harris County District Clerk to respond.

-8-

13. On April 2, 2018, the trial court ordered the District Clerk to transmit the habeas record to the Texas Court of Criminal Appeals.

14. On June 27, 2018, the Texas Court of Criminal Appeals remanded the case to the trial court for fact finding.

15. The Texas Court of Criminal Appeals remanded the case for the trial court to make findings regarding whether trial counsel was ineffective for failing to seek out, interview, and present testimony from two witnesses, and whether trial counsel was ineffective for failing to request a concurrent causation instruction or lesser-included offense instructions in the jury charge.

16. The Texas Court of Criminal Appeals also directed the trial court to make findings regarding whether appellate counsel was ineffective for failing to file a motion for new trial.

17. The Texas Court of Criminal Appeals reviewed the applicant's other claims and found them to be without merit.

18. On July 11, 2018, the trial court, Judge Bradley presiding, ordered Tara N. Long, Sonya Chandler-Anderson, Charles Brown, and Kurt Wentz to file affidavits responding to the applicant's claims.

19. On July 9, 2019, Kurt Wentz filed an affidavit responding to the applicant's claims. *State's Writ Exhibit "A", Affidavit of Kurt Wentz.*

20. The trial court, Judge Lori-Gray presiding, finds the affidavit of Kurt Wentz to be credible.

21. On November 13, 2019, Tara N. Long filed an affidavit responding to the applicant's claims. *State's Writ Exhibit "B", Affidavit of Tara N. Long.*

22. The trial court finds the affidavit of Tara N. Long to be credible.

23. Tara N. Long was lead counsel in the applicant's case.

24. On November 15, 2019, Charles Brown filed an affidavit responding to the applicant's claims. *State's Writ Exhibit "C", Affidavit of Charles Brown.*

25. The trial court finds the affidavit of Charles Brown to be credible.

26. On July 19, 2021, the applicant filed a supplemental application alleging ineffective assistance of counsel for failing to object to the jury charge and for failing to call an expert witness.

27. The trial court appointed Thomas Moran to represent the applicant in the instant writ proceedings.

28. As of the filing of these Proposed Findings of Fact and Conclusions of Law, Sonya Chandler-Anderson has yet to file an affidavit responding to the applicant's claims.

29. Tara Long was lead counsel and enlisted the assistance of Charles Brown and Sonya Chandler-Anderson when the applicant's case was set for trial. *State's Writ Exhibit "B", Affidavit of Tara N. Long*.

30. Despite Sonya Chandler-Anderson's failure to file an affidavit, the trial court is able to make findings of fact and conclusions of law based on the affidavits of Tara N. Long, Charles Brown, and Kurt Wentz.

31. The applicant claims trial counsel was ineffective for failing to seek out, interview and present testimony from two witnesses, one of whom intervened during an earlier confrontation between the applicant and the victim, and the other, the victim's son, Terrell Robinson, who was apparently firing a 9mm gun at the scene of the offense.

32. The applicant describes the witness who intervened during an earlier confrontation between the applicant and the victim as "Moesha's sister's boyfriend".

33. The applicant does not identify "Moesha's sister's boyfriend" by name.

34. The applicant fails to prove the identity of "Moesha's sister's boyfriend".

35. The applicant fails to show what trial counsel would have learned from speaking to "Moesha's sister's boyfriend".

36. The applicant fails to prove what "Moesha's sister's boyfriend" would have testified to.

-10-

37.  The applicant fails to prove that "Moesha's sister's boyfriend" was available to testify at the applicant's trial and that his testimony would have benefited the applicant.

38.  The applicant fails to prove what Terrell Robinson would have testified to.

39.  The trial court finds, based on Tara N. Long's affidavit, that Long was not able to obtain a statement from the victim's son (Terrell Robinson) because he was hostile and would not cooperate.

40.  The applicant fails to prove that Terrell Robinson's testimony would have benefited the defense.

41.  The applicant fails to prove that Terrell Robinson was available to testify at the applicant's trial.

42.  The applicant claims trial counsel was ineffective for failing to request a jury instruction on concurrent causation.

43.  To warrant a concurrent causation instruction, the record must show evidence that the concurrent cause was clearly sufficient to produce the result and the conduct of the applicant was clearly insufficient.  Tex. Penal Code Ann. §6.04(a).

44.  The trial court finds, based on Tara N. Long's affidavit, that in Long's opinion, there was no evidence presented to support a jury instruction on concurrent causation.  *State's Writ Exhibit "B", Affidavit of Tara N. Long*.

45.  The applicant fails to show that his conduct was clearly insufficient to cause the complainant's death.

46.  The applicant fails to show that the evidence supported a jury instruction on concurrent causation.

47.  The applicant claims trial counsel was ineffective for failing to request a jury instruction on the lesser-included offense aggravated assault.

48.  The applicant fails to show there is evidence in the record that would permit a jury to rationally find that if the applicant was guilty, he was only guilty of the lesser-included offense.

-11-

49.  The applicant claims trial counsel was ineffective for failing to object to the jury charge that did not track the language of the indictment.

50.  The applicant was charged as follows:

[image of indictment omitted]

51.  The State is permitted to plead in the conjunctive and prove in the disjunctive.

52.  The jury was charged as follows:

[image of jury charge omitted]

53.  The applicant fails to show the jury charge did not track the language in the indictment.

54.  The applicant fails to show the trial court would have committed error in overruling an objection to the jury charge on the ground that it failed to track the language in the indictment.

55.  The applicant claims trial counsel was ineffective for failing to hire an expert witness.

56.  The applicant fails to identify an expert witness who would have been available to testify at the applicant's trial.

57.  The applicant fails to prove an expert witness would have testified to his benefit.

58.  The applicant claims he was denied the effective assistance of appellate counsel due to appellate counsel's failure to file a motion for new trial to preserve various issues for direct appeal. *Applicant's Writ Application at 8-9.*

59.  The applicant claims the motion for new trial would have consisted of the following grounds:

    a.    Brady information concerning a lead detective, trial counsel didn't have adequate time to locate Sgt. Gunter;

    b.    Ineffective assistance of counsel for failing to object to allowing privileged testimony by the Prosecutor;

-12-

     c.   Ineffective assistance of counsel for failing to properly impeach Brandon Bridges' testimony;

     d.   Prosecutorial misconduct knowing or should have known Bridges was testifying to perjured testimony;

     e.   Failure for the trial court to apply the law to the facts, to allow the jury to make a fair and confident verdict to a hypothetically correct jury charge; and

     f.   Evidence was not sufficient to support the verdict. *Applicant's Writ at 9.*

60.  The trial court finds, based on the affidavit of Kurt Wentz, that the appellate record was not complete at the time the expiration to file a motion for new trial had passed, therefore Wentz did not know if there were any record reasons for a motion for new trial.

61.  The trial court finds, based on the affidavit of Kurt Wentz, that Wentz was never advised by anyone that there was a legitimate bases for filing a motion for new trial during the 30 day time frame.

62.  The trial court finds, based on the affidavit of Kurt Wentz, that Wentz did not communicate with the applicant during the period of time in which to file a motion for new trial.

63.  The trial court finds, based on the affidavit of Kurt Wentz, that Wentz's failure to communicate with the applicant prior to the expiration of the time to file a motion for new trial did not impair Wentz's ability to raise meritorious points of error on direct appeal.

64.  The applicant fails to show harm as a result of Wentz's failure to file a motion for new trial.

### CONCLUSIONS OF LAW

1.  In order to prevail on a claim of ineffective assistance of trial counsel, the applicant must prove that trial counsel's representation was deficient, and that the deficient performance prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 687 (1984).

2.  Trial counsel's representation is deficient if it falls below an objective standard of reasonableness. *Id.* at 688.

3.   In order to establish prejudice, the applicant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.   *Id.* at 694.

4.   In reviewing trial counsel's conduct, there is a strong presumption that the attorney's actions were reasonable and based on sound trial strategy.   *Jackson v. State,* 877 S.W.2d 768, 771 (Tex. Crim. App. 1994).

5.   The Strickland test applies to claims of ineffective assistance of appellate counsel.   *Ex parte Jarrett,* 891 S.W.2d 935, 944 (Tex. Crim. App. 1994), *overruled on other grounds, Ex parte Wilson,* 956 S.W.2d 25 (Tex. Crim. App. 1997).

6.   To show trial counsel was ineffective for failing to investigate, an applicant must show what additional investigation would have revealed.   *Mooney v. State,* 817 S.W.2d 693, 697 (Tex. Crim. App. 1991).

7.   To show trial counsel was ineffective for failing to call a witness, an applicant must show that the witness was available and that their testimony would have benefited the defense.   *King v. State,* 649 S.W.2d 42, 44 (Tex. Crim. App. 1983).

8.   Because the applicant fails to show what information "Moesha's sister's boyfriend" would have provided to trial counsel had she interviewed him, the applicant fails to show trial counsel was ineffective for failing to identify, locate, and interview this person.   *Mooney,* 817 S.W.2d at 697.

9.   Because the applicant fails to show that "Moesha's sister's boyfriend" was available and that his testimony would have benefited the defense, the applicant fails to show trial counsel was ineffective for failing to call this witness to testify.   *King,* 649 S.W.2d at 44.

10.   Because the applicant fails to show what information Terrell Robinson would have provided to trial counsel had she interviewed him, the applicant fails to show trial counsel was ineffective for failing to interview him. *Mooney,* 817 S.W.2d at 697.

11.   Because the applicant fails to show that Terrell Robinson was available and that his testimony would have benefited the defense, the applicant fails to show trial counsel was ineffective for failing to call him to testify.   *King,* 649 S.W.2d at 44.

-14-

12. Because the applicant fails to show an expert was available and that their testimony would have benefited the defense, the applicant fails to show trial counsel was ineffective for failing to call an expert. *King,* 649 S.W.2d at 44.

13. Because the applicant fails to show the evidence supports a jury instruction on concurrent causation, he fails to show trial counsel was ineffective for failing to request a jury instruction on concurrent causation. *Strickland,* 466 U.S. at 687.

14. A defendant is entitled to an instruction on a lesser-included offense where the proof for the offense charged includes the proof necessary to establish the lesser-included offense, and there is evidence in the record that would permit a jury to rationally find that if the defendant is guilty, he is only guilty of the lesser-included offense. *Bignall v. State,* 887 S.W.2d 21, 23 (Tex. Crim. App. 1994).

15. Because the applicant fails to show there is evidence in the record that would permit a jury to rationally find that he was only guilty of aggravated assault, the applicant fails to show trial counsel was ineffective for failing to request a jury instruction on aggravated assault. *Strickland,* 466 U.S. at 687.

16. Because the applicant fails to show harm as a result of appellate counsel's failure to file a motion for new trial, the applicant fails to show appellate counsel was ineffective for failing to file a motion for new trial. *Id.*

17. Because the applicant fails to show harm as a result of appellate counsel's failure to communicate with the applicant until the deadline for filing a motion for new trial had passed, the applicant fails to show appellate counsel was ineffective for failing to communicate with him until after the deadline had passed. *Id.*

18. In all things, the applicant fails to show trial counsel was ineffective.

19. In all things, the applicant fails to show appellate counsel was ineffective.

20. In all things, the applicant fails to show that his conviction and sentence were improperly obtained.

Accordingly, it is recommended to the Texas Court of Criminal Appeals that the instant application for writ of habeas corpus be denied.[21]

On March 29, 2023, the Texas Court of Criminal Appeals denied relief without a written order based on the findings of the trial court without a hearing and on the court's own independent review of the record.[22]

## C.   Petitioner's Federal Habeas Petition

Hinton filed the Original Petition on April 8, 2016.[23] In the Original Petition, Hinton asserts 11 grounds for relief.[24]  On October 19, 2018, the court dismissed the Original Petition without prejudice for lack of exhaustion.[25]  On April 27, 2023, the court reinstated the case upon Hinton's motion.[26]  The respondent was ordered to file an answer.[27]  After Respondent's Answer was filed,

---

[21]Findings and Conclusions, Docket Entry No. 33-34, pp. 31-41.

[22]See Texas Court of Criminal Appeals website, Action Take on Writ No. 88,180-02, available at https://search.txcourts.gov/SearchMedia.aspx?MediaVersionID=0157ed02-c164-4b63-89b1-9405f7ae16a2&coa=coscca&DT=ACTION%20TAKEN&MediaID=1ee12a39-13a5-4d71-8515-7371bf93bcf3 (last visited April 5, 2025).

[23]Original Petition, Docket Entry No. 1, p. 10 (certifying that Hinton placed his Petition in the prison mail system on April 8, 2016).

[24]See id. at 13-19.

[25]Memorandum Opinion and Order of October 19, 2018, Docket Entry No. 19, p. 8 ¶ 2.

[26]Order to Reinstate and Request for Answer, Docket Entry No. 22.

[27]Id.

Hinton requested leave to amend the Original Petition to include three additional grounds for relief that were not included among the grounds previously asserted in the Original Petition.[28]  The court granted the motion and granted additional time for the respondent to file a supplemental answer.[29]  Altogether, Hinton seeks relief from his murder conviction on the following grounds:

(1)  He was denied due process at trial because the prosecutor engaged in misconduct by presenting false testimony.

(2)  He was denied effective assistance of counsel on appeal when his appointed appellate attorney failed to file a motion for new trial.

(3)  The trial court failed to apply the law of self-defense against multiple assailants to the facts of his case.

(4)  His conviction violates due process because the prosecution failed to prove all elements of the offense.

(5)  He was denied effective assistance of counsel at trial when his attorney failed to request a jury instruction on "Concurrent Causation."

(6)  He was denied effective assistance of counsel at trial when his attorney allowed the prosecutor to present privileged testimony from Hinton's wife.

(7)  He was denied effective assistance of counsel at trial when his attorney failed to suppress testimony from jailhouse informant Brandon Bridges.

(8)  He was denied effective assistance of counsel at trial when his attorney failed to interview "Moeshe['s] sister's Boyfriend."

---

[28]See Petitioner's Motion for Leave of Court to Amend § 2254 Habeas Corpus Application Pursuant to Fed. Civ. R. Proc. Rule 15, Docket Entry No. 42.

[29]Memorandum Opinion and Order of December 4, 2023, Docket Entry No. 45, p. 8 ¶¶ 1-2.

(9) He was denied effective assistance of counsel at trial when his attorney failed to request a jury instruction on the lesser-included offense of aggravated assault.

(10) He was denied effective assistance of counsel during the punishment phase of his trial when his attorney failed to argue mitigating evidence of manslaughter.

(11) He was denied effective assistance of counsel at trial when his attorney failed to subpoena the victim's son, Terrell Robinson, as a material witness.

(12) He was denied effective assistance of counsel when his trial attorney failed to object to language in the jury instructions regarding the state's burden of proof.

(13) He was denied effective assistance of counsel when his trial attorney failed to retain an independent ballistics expert.

(14) He was denied effective assistance of counsel when his trial attorney failed to obtain an independent expert to refute the state's forensic evidence about the victim's gunshot injuries.[30]

The record reflects that these claims were among those raised previously by Hinton in the State Habeas Application.[31]    The

---

[30] See Original Petition, Docket Entry No. 1, pp. 13–19 (Grounds One–Eleven); Amended Petition, Docket Entry No. 40, pp. 6–7 (Grounds Twelve–Fourteen). Because Hinton represents himself, his pleadings are subject to a less stringent standard than those drafted by lawyers. See Haines v. Kerner, 92 S. Ct. 594, 596 (1972) (per curiam); see also Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) (per curiam) ("A document filed pro se is 'to be liberally construed[.]'") (quoting Estelle v. Gamble, 97 S. Ct. 285, 292 (1976)).

[31] See Brief for Appellant, Docket Entry No. 34-11; Original State Habeas Application, Docket Entry No. 33-1, pp. 11–18 (Grounds One–Four); Amended State Habeas Application, Docket Entry No. 33-2, p. 53 (Ground One) and continued at Docket Entry No. 33-3, pp. 1–13 (Grounds One–Seven); Second Amended State Habeas Application, Docket Entry No. 33-17, pp. 122–125 (Grounds Twelve–Thirteen).

respondent has filed an Answer and Supplemental Answer with Brief in Support, arguing that Hinton's claims lack merit and that he cannot overcome the AEDPA deference to the state court decision.[32]

## II.   <u>Standard of Review</u>

When the Texas Court of Criminal Appeals has denied a state habeas application without a written order, as it has in this case, that decision qualifies as an adjudication on the merits, which is subject to deference under the federal habeas corpus standard of review established by the AEDPA, 28 U.S.C. § 2254 (d). <u>See Anaya v. Lumpkin,</u> 976 F.3d 545, 550 (5th Cir. 2020); <u>see also Miller v. Johnson,</u> 200 F.3d 274, 281 (5th Cir. 2000) ("Under Texas law a denial of relief by the Court of Criminal Appeals serves as a denial of relief on the merits of the claim.").[33]  Under the AEDPA standard a federal habeas corpus court may not grant relief unless the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]"  28 U.S.C. § 2254 (d)(1).  Likewise, if a claim presents a question of fact, a petitioner cannot obtain federal habeas relief unless he shows that the state court's decision "was based on an unreasonable determination of the facts in light of the

---

[32]Respondent's Answer, Docket Entry No. 35; Respondent's Supplemental Answer, Docket Entry No. 46.

[33]The Texas Court of Criminal Appeals has clarified that "a 'denial' signifies that we addressed and rejected the merits of a particular claim while a 'dismissal' means that we declined to consider the claim for reasons unrelated to the claim's merits." <u>Ex parte Torres,</u> 943 S.W.2d 469, 472 (Tex. Crim. App. 1997).

evidence presented in the State court proceeding." 28 U.S.C.
§ 2254(d)(2).

"A state court's decision is deemed contrary to clearly
established federal law if it reaches a legal conclusion in direct
conflict with a prior decision of the Supreme Court or if it
reaches a different conclusion than the Supreme Court on materially
indistinguishable facts." Matamoros v. Stephens, 783 F. 3d 212,
215 (5th Cir. 2015) (internal quotation marks and citations
omitted). To constitute an "unreasonable application of" clearly
established federal law, a state court's holding "must be
objectively unreasonable, not merely wrong; even clear error will
not suffice." Woods v. Donald, 135 S. Ct. 1372, 1376 (2015)
(quoting White v. Woodall, 134 S. Ct. 1697, 1702 (2014)). "To
satisfy this high bar, a habeas petitioner is required to 'show
that the state court's ruling on the claim being presented in
federal court was so lacking in justification that there was an
error well understood and comprehended in existing law beyond any
possibility for fairminded disagreement.'" Id. (quoting Harrington
v. Richter, 131 S. Ct. 770, 786-87 (2011)).

A state court's factual determinations are also entitled to
"substantial deference" on federal habeas corpus review. Brumfield
v. Cain, 135 S. Ct. 2269, 2277 (2015); Wood v. Allen, 130 S. Ct.
841, 849 (2010) (noting that "a state-court factual determination
is not unreasonable merely because the federal habeas court would
have reached a different conclusion in the first instance"). A
state court's findings of fact are "presumed to be correct" unless

-20-

the petitioner rebuts those findings with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). The presumption of correctness extends not only to express factual findings, but also to implicit or "'unarticulated findings which are necessary to the state court's conclusions of mixed law and fact.'" Murphy v. Davis, 901 F.3d 578, 597 (5th Cir. 2018) (quoting Valdez v. Cockrell, 274 F.3d 941, 948 n.11 (5th Cir. 2001)).

The record that accompanies Hinton's State Habeas Application reflects that the Texas Court of Criminal Appeals only remanded certain of Hinton's claims in his State Habeas Application to the trial court for fact finding.[34] As to Hinton's other claims, the Texas Court of Criminal Appeals stated that it had reviewed them and found "them to be without merit."[35] Thus, the record before this court includes findings of fact and conclusions of law by the trial court on certain issues raised by Hinton in the State Habeas Application, but no findings of fact and conclusions of law on certain other issues. Nevertheless, the deferential AEDPA standard of review applies even where the state court fails to cite applicable Supreme Court precedent or explain its decision. See Early v. Packer, 123 S. Ct. 362, 365 (2002) (per curiam); see also

---

[34]See Ex parte Hinton, 2018 WL 3133970, at *1 (remanding the following claims to the trial court for fact finding: (1) whether trial counsel was ineffective for failing to seek out and interview testimony from "Moeshe['s] sister's boyfriend" and the victim's son, Terrell Robinson; (2) whether trial counsel was ineffective for failing to request a concurrent causation instruction or lesser-included offense instructions in the jury charge; and (3) whether appellate counsel was deficient for failing to file a motion for new trial).

[35]See id. at *1, n.1.

Cullen v. Pinholster, 131 S. Ct. 1388, 1402 (2011) ( "Section 2254(d)
applies even where there has been a summary denial."); Richter, 131
S. Ct. at 785 ("This Court now holds and reconfirms that § 2254(d)
does not require a state court to give reasons before its decision
can be deemed to have been 'adjudicated on the merits.'").  Because
a federal habeas corpus court only considers the reasonableness of
the state court's ultimate decision, the AEDPA inquiry is not altered
when the state court denies relief without a written opinion.  See
Schaetzle v. Cockrell, 343 F.3d 440, 443 (5th Cir. 2003).  In such
circumstances, a federal habeas corpus court:  "(1) assumes that the
state court applied the proper 'clearly established Federal law'; and
(2) then determines whether its decision was 'contrary to' or 'an
objectively unreasonable application of' that law."  Id. (quoting 28
U.S.C. § 2254(d)(1)-(2)).

## III.   Discussion[36]

## A.   The claim that Hinton's conviction violates due process because the prosecution failed to prove all elements of the offense.

Hinton argues that his due process rights were violated
because the prosecutor produced "no evidence" at trial and failed

_____

[36]The court has combined and re-ordered its discussion of
certain claims to facilitate a more orderly analysis.   In
Petitioner's Supplemental Reply, Hinton asserts that the respondent
has not addressed all of his claims.   See Docket Entry No. 59 at
pp. 4-20.  Review of Respondent's Answer (Docket Entry No. 35) and
Respondent's Supplemental Answer (Docket Entry No. 46) reveals that
the respondent has addressed each of Hinton's claims.   In any
event, the court has thoroughly considered the claims asserted in
the Petition.

to prove all essential elements to support a murder conviction.[37] Hinton asserts that there was no evidence at trial that "affirmatively links" him to the "fatal shot."[38] He states that an expert witness, Tammy Lyons, testified that there were three or four possible guns used during the incident in question.[39] Hinton argues that there is a high reasonable probability that the victim was shot by more than one type of gun.[40]

On habeas corpus review of a state court conviction, challenges to the sufficiency of the evidence are governed by <u>Jackson v. Virginia,</u> 99 S. Ct. 2781 (1979), which reflects the federal constitutional due process standard. <u>See Woods v. Cockrell,</u> 307 F.3d 353, 358 (5th Cir. 2002). "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." <u>United States v. Davis,</u> 735 F.3d 194, 198 (5th Cir. 2013) (quoting <u>In re Winship,</u> 90 S. Ct. 1068, 1073 (1970)). This standard only requires that a reviewing court determine "whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson,</u> 99 S. Ct. at 2789 (emphasis in original).

---

[37]Original Petition, Docket Entry No. 1, pp. 14–15.

[38]<u>Id.</u> at 14.

[39]<u>Id.</u> at 15.

[40]<u>Id.</u>

The Supreme Court has emphasized "that <u>Jackson</u> claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." <u>Coleman v. Johnson,</u> 132 S. Ct. 2060, 2062 (2012) (per curiam). A federal habeas corpus court questions only whether the state court's assessment of the already-strict <u>Jackson</u> standard was unreasonable. <u>See</u> 28 U.S.C. § 2254(d)(1). Together, <u>Jackson</u> and the AEDPA require a "double dose of deference that can rarely be surmounted." <u>Boyer v. Belleque,</u> 659 F.3d 957, 964 (9th Cir. 2011).

In conducting its review under this doubly deferential standard, the court looks to the last reasoned state judgment that considered and rejected the petitioner's federal claim. <u>See Ylst v. Nunnemaker,</u> 111 S. Ct. 2590, 2594 (1991); <u>see also Wilson v. Sellers,</u> 138 S. Ct. 1188, 1193–94 (2018). That judgment was issued by the intermediate state court of appeals, which set forth the elements of the offense and concluded that there was more than sufficient evidence to support the conviction:

### I.  Legal Sufficiency

In his first issue, appellant contends that the evidence was insufficient for the jury to both convict him of murder and reject his self-defense claim. We disagree on both counts.

#### A.  Standard of Review

We apply a legal sufficiency standard of review to determine whether the evidence is sufficient to support a conviction. *Temple v. State,* 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). We must view the evidence in the light most favorable to the verdict and affirm if any rational juror could have found the essential elements of the offense beyond a reasonable doubt and could have implicitly rejected the defendant's self-defense claim

beyond a reasonable doubt. *See* Tex. Penal Code Ann.
§ 2.03(d) (West 2011); *Gross v. State,* 380 S.W.3d 181,
185 (Tex. Crim. App. 2012); *Temple,* 390 S.W.3d at 360;
*Saxton v. State,* 804 S.W.2d 910, 914 (Tex. Crim. App.
1991); *Hull v. State,* 871 S.W.2d 786, 789 (Tex.
App.—Houston [14th Dist.] 1994, pet. ref'd).

Viewing the evidence in the light most favorable to the
verdict means that the jury is the sole judge of witness
credibility and the weight to be attached to witness
testimony. *Temple,* 390 S.W.3d at 360. The jury can draw
reasonable inferences from the facts as long as each
inference is supported by the evidence, and if the record
supports conflicting inferences, we presume that the jury
resolved the conflicts in favor of the verdict. *Id.* If
the record contains no probative evidence of an element
of the offense or merely a "modicum" of probative
evidence, then the evidence is insufficient to uphold the
conviction. *Garcia v. State,* 367 S.W.3d 683, 687 (Tex.
Crim. App. 2012).

> **B. The evidence was sufficient for a rational jury
> to conclude beyond a reasonable doubt that
> appellant caused the complainant's death.**

A person commits murder if he intentionally or knowingly
causes the death of an individual or if he intends to
cause serious bodily injury and commits an act clearly
dangerous to human life that causes the death of an
individual. Tex. Penal Code Ann. § 19.02(b)(1), (b)(2)
(West 2011). According to the assistant medical
examiner, the cause of death in this case was multiple
gunshot wounds. The assistant medical examiner
testified, however, that only one of the complainant's
five gunshot wounds was "immediately fatal" because it
perforated the complainant's aorta. Appellant specifi-
cally attacks the causation element of his murder
conviction, arguing that the evidence was insufficient to
prove beyond a reasonable doubt that he inflicted the
wound that was "immediately fatal." We disagree.

The jury could have rationally concluded that appellant
shot the complainant in the back, inflicting the fatal
wound. Floyd testified that appellant was standing
behind the complaint[sic] when appellant opened fire.
Washington testified that appellant shot the complainant
in the chest. According to the autopsy report and the
assistant medical examiner's testimony, the bullet that
caused the fatal chest wound entered the complainant's
body from the rear. It perforated his back muscles,
posterior chest wall, the upper lobe of his right lung,

-25-

the arch of his aorta, and his left chest wall. The bullet ultimately exited the front of the complainant's chest.

The jury could have rationally disregarded appellant's theory that another firearm inflicted the fatal wound. Appellant used a .380 caliber handgun in the attack, which was not recovered. Two other guns were found at the scene and introduced into evidence: a Smith and Wesson .38 Special and a Glock .9mm. Witnesses testified that after the first confrontation between the complainant and appellant, the complainant retrieved a rifle from his apartment. Thus, aside from appellant's .380 handgun, the evidence indicates that only three guns could have inflicted the fatal wound and caused the complainant's death: (1) the rifle, (2) the Smith and Wesson .38 Special, and (3) the Glock .9mm.

The jury could have first determined that the rifle did not inflict the fatal wound because there is no evidence that a rifle was used during the incident. Next, the jury could have determined that the .38 Special did not inflict the fatal wound. Investigators at the scene found the .38 Special in the complainant's pants and recovered six unfired rounds from it. The State's ballistics expert testified that the .38 Special did not function properly when she initially tried to test fire it. The complainant was right-handed, and no gunshot residue was found on the complainant's right hand. When describing the incident to Brandon Bridges, appellant's cellmate at the Harris County jail, appellant said he was unaware that anyone else had a gun. The jury could have rationally inferred from the evidence that the .38 Special was not used during the incident.

Finally, the jury could have determined that the Glock .9mm did not inflict the fatal wound. Appellant told Bridges that he fled the apartment complex immediately after the shooting. Sherry Johnson, the complainant's wife, testified that Terrell Robinson, the complainant's son, started shooting the Glock .9mm after appellant had already fled the scene. Ms. Johnson testified that Robinson was shooting the Glock .9mm in the direction of the apartment where appellant had attended the party. After shooting at the apartment, Robinson asked Ms. Johnson about the complainant's location. Ms. Johnson later found Robinson holding the complainant, who was bleeding from his chest and mouth. The police found the Glock .9mm under the complainant's body. Multiple witnesses testified that Robinson was not present when appellant began firing. From this evidence,

-26-

the jury could have inferred that Robinson was not shooting at the complainant.

Appellant contends that the fatal wound must have been caused by the Glock .9mm because the police recovered ten .9mm bullet casings but only two .380 bullet casings. Appellant's argument lacks merit because it proceeds from the false premise that the number of recovered bullet casings correlates to the number of shots fired by a particular gun. The evidence indicates that appellant fired his gun at least four times: (1) Floyd testified that appellant shot him in the ankle; (2) Johnson testified that appellant shot him in the stomach; (3) Washington testified that appellant shot the complainant in the chest; and (4) the assistant medical examiner recovered a .380 bullet from the complainant's leg. Applying appellant's logic, the police should have recovered at least four bullet casings. Thus, the number of recovered bullet casings does not necessarily correlate to the number of shots fired by a particular gun, and the jury could have rationally discounted the probative value of the bullet-casing evidence.

After a thorough review of the record and giving proper deference to the jury's verdict, we conclude that the evidence is sufficient to support the jury's finding of guilt.

### C. The evidence was legally sufficient for a rational jury to implicitly reject appellant's claim of self-defense.

"[A] person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." Tex. Penal Code Ann. § 9.31(a) (West 2011). A person's use of deadly force is justified if (1) he would be justified in using force under section 9.31(a) and (2) he reasonably believes that deadly force is immediately necessary to protect against another's use or attempted use of deadly force or to prevent another's imminent commission of aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery. Id. § 9.32(a) (West 2011). Deadly force means force that is intended or known by the actor to cause or is capable of causing death or serious bodily injury. Id. § 9.01(3) (West 2011). The use of force against another is not justified, however, if the actor "sought an explanation from or discussion with the other person concerning the actor's differences with the other

person while the actor was carrying a weapon in violation of [Penal Code] Section 46.02." *Id.* § 9.31(b)(5). Section 46.02 makes it illegal for a person to intentionally, knowingly, or recklessly carry a handgun if the person is not on his own premises or premises under the person's control or inside of or directly en route to a motor vehicle or watercraft that is owned by the person or under the person's control. *Id.* § 46.02(a) (West Supp. 2013). "Differences" means a "'disagreement of opinion,' or 'an instance of disagreement or a point upon which there is disagreement.'" *Hernandez v. State,* 309 S.W.3d 661, 664 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (quoting *Webster's Third Int'l Dictionary* 629 (1993)).

Appellant contends that a rational jury could not have implicitly found against him beyond a reasonable doubt on his claim of self-defense for three reasons: (1) he was confronted with four or five potential assailants, some of whom were armed; (2) he intended to shoot the dog, not the complainant; and (3) he only fired his gun after the complainant reached for his own gun. The State responds that because appellant's actions were not justified as a matter of law under Texas Penal Code section 9.31(b)(5), the jury correctly rejected his self-defense claim. We conclude that the jury could have implicitly found against appellant's self-defense on section 9.31(b)(5) and 9.32(a) grounds.

The jury was instructed on both the law of self-defense and on the section 9.31(b)(5) limitation on self-defense. The jury could have implicitly rejected appellant's self-defense claim by concluding that the requirements of section 9.31(b)(5) were met. The evidence shows that the victim and appellant had a difference of opinion regarding the dog bite. They disagreed about whether appellant had been bitten and about the appropriate remedy for appellant's alleged injury. Appellant acquired a handgun from his wife and brought it to the apartment complex. Appellant was not on his own premises nor was the apartment complex where the shooting occurred under appellant's control. Appellant was not en route to his vehicle while he carried the weapon; to the contrary, he carried the weapon from his vehicle to the scene of the crime. Appellant did not have a concealed handgun license.

The jury could have also implicitly rejected appellant's self-defense claim without resorting to section 9.31(b)(5). Although appellant contends that he feared for his life when he was confronted by the complainant

-28-

and his group of friends, that he did not intend to shoot
the complainant, and that he only shot the complainant
after seeing the complainant's gun, the evidence
contradicts appellant's portrayal of the facts.
Appellant was not confronted by multiple assailants. He
confronted a group of acquaintances who were socializing
outside and started shooting at them when the complainant
would not acquiesce to his demands. While testimony
revealed that the complainant armed himself during
appellant's absence from the apartment complex, several
witnesses agreed that appellant began shooting first.
Prior to the shooting, appellant told his girlfriend that
he planned to knock the complainant's "old ass" down.
Appellant told Bridges that he did not see anyone else
with a gun and that he shot the complainant to "make a
point." Although testimony from appellant's wife
indicated that appellant saw the complainant with a gun,
the jury, as the sole judge of credibility, was free to
disregard the wife's testimony, which conflicted with the
testimony of other witnesses. *See Saxton,* 804 S.W.2d at
914; *Hull,* 871 S.W.2d at 789. The jury could have
inferred from appellant's behavior that he was the
aggressor and that the attack was not instigated by the
complainant or the other witnesses who were present
during the shooting.

After reviewing the evidence in the light most favorable
to the verdict, we conclude that the jury could have
found beyond a reasonable doubt that appellant's use of
force was not justified. Having already concluded that
sufficient evidence exists to support a finding that
appellant caused the complainant's death, we overrule
appellant's first issue.

Hinton, 2014 WL 1516151, at *1-5.

Hinton argues that his due process rights were violated
because the prosecutor produced "no evidence" at trial and failed
to prove all essential elements to support a murder conviction.[41]
Hinton asserts that there was no evidence at trial that
"affirmatively links" him to the "fatal shot."[42] He states that an
expert witness, Tammy Lyons, testified that there were three or

---

[41]Id. at 14-15.

[42]Id. at 14 (Ground Four).

four possible guns used during the incident in question.[43]  Hinton argues that there is a high reasonable probability that the victim was shot by more than one type of gun.[44]

As noted by the state court, there were several pieces of evidence that linked Hinton to firing the shot that killed the victim, and it was rational for the jury to conclude that the bullet that killed the victim was not fired from the other guns at the scene.  None of the arguments offered by Hinton refute any of the state court's findings of fact, which are presumed correct on federal habeas review.  See 28 U.S.C. § 2254(e)(1); Sumner v. Mata, 101 S. Ct. 764, 769 (1981) (observing that the presumption of correctness "applies to factual determinations made by state courts, whether the court be a trial court or an appellate court").  Under these circumstances, the state court's well-reasoned opinion is entitled to "'great weight'" on federal habeas review.  Parker v. Procunier, 763 F.2d 665, 666 (5th Cir. 1985) (citing Jackson, 99 S. Ct. at 2791, n.15); see also Callins v. Collins, 998 F.2d 269, 276 (5th Cir. 1993) ("Where a state appellate court has conducted a thoughtful review of the evidence . . . its determination is entitled to great deference.").

To the extent that Hinton asks this court to re-weigh the evidence and decide if the jury's decision was correct, this type of inquiry exceeds the scope of review permitted under the Jackson standard.  See Schlup v. Delo, 115 S. Ct. 851, 868 (1995) ("[U]nder

---

[43]Id. at 15 (Ground Four).

[44]Id.

<u>Jackson,</u> the assessment of the credibility of witnesses is generally beyond the scope of review."). A federal habeas corpus court may not substitute its view of the evidence for that of the fact-finder. <u>See Weeks v . Scott,</u> 55 F.3d 1059, 1062 (5th Cir. 1995). Under the <u>Jackson</u> standard "[a]ll credibility choices and conflicting inferences are to be resolved in favor of the verdict." <u>Ramirez v. Dretke,</u> 398 F.3d 691, 695 (5th Cir. 2005). Viewing all of the evidence under the doubly deferential standard that applies on federal habeas review, Hinton has not shown that the state court's decision was objectively unreasonable or that he is entitled to relief under <u>Jackson.</u> Therefore, Hinton is not entitled to federal habeas corpus relief on his claim that the evidence was insufficient to support his conviction.

**B.   The claim that the trial court failed to apply the law of self-defense against multiple assailants to the facts of his case.**

Hinton asserts that he is entitled to habeas relief because the trial court "Neglected to Apply the Very Law to the facts, of Self-defense against Multiple Assailants."[46] Hinton argues that the testimony of Tiffany Edwards supports that he was surrounded by the victim's friends and that he was "pushed/assaulted."[47]

It is not entirely clear what Hinton means by the argument that the trial "neglected to apply the very law to the facts, of self-defense against multiple assailants." To the extent that he

---

[46]<u>Id.</u> at 14 (Ground Three).

[47]<u>Id.</u>

is arguing that testimony from Ms. Edwards that he was
"pushed/assaulted" is inconsistent with testimony that supported
Hinton being the aggressor during the incident, such claim is
without merit.    First, contradictory trial testimony "merely
establishes a credibility question for the jury."    See Koch v.
Puckett, 907 F.2d 524, 531 (5th Cir. 1990) (citing Little v.
Butler, 848 F.2d 73, 76 (5th Cir. 1988)).    Second, as just
discussed in Section III.A, the intermediate state appellate court
concluded that the evidence was legally sufficient for a rational
jury to implicitly reject the claim of self-defense.[48]    The
intermediate state court of appeals pointed out several pieces of
evidence as to why the jury could have rejected Hinton's claim of
self-defense — including that he was the aggressor during the
incident — and found that the use of force was not justified.    In
particular, the state court found that:

> Although appellant contends that he feared for his life
> when he was confronted by the complainant and his group
> of friends, that he did not intend to shoot the
> complainant, and that he only shot the complainant after
> seeing the complainant's gun, the evidence contradicts
> appellant's portrayal of the facts.    Appellant was not
> confronted by multiple assailants.    He confronted a group
> of acquaintances who were socializing outside and started
> shooting at them when the complainant would not acquiesce
> to his demands.    While testimony revealed that the
> complainant armed himself during appellant's absence from
> the apartment complex, several witnesses agreed that
> appellant began shooting first.    Prior to the shooting,
> appellant told his girlfriend that he planned to knock
> the complainant's "old ass" down.    Appellant told Bridges
> that he did not see anyone else with a gun and that he
> shot the complainant to "make a point."    Although
> testimony from appellant's wife indicated that appellant
> saw the complainant with a gun, the jury, as the sole

---

[48]See Hinton, 2014 WL 1516151, at *4–5.

> judge of credibility, was free to disregard the wife's
> testimony, which conflicted with the testimony of other
> witnesses.   *See Saxton,* 804 S.W.2d at 914; *Hull,* 871
> S.W.2d at 789.    The jury could have inferred from
> appellant's behavior that he was the aggressor and that
> the attack was not instigated by the complainant or the
> other witnesses who were present during the shooting.

Hinton, 2014 WL 1516151, at *5.

Hinton's argument does not refute any of the state court's findings of fact, which are presumed correct on federal habeas review. See 28 U.S.C. § 2254(e)(1); Sumner, 101 S. Ct. at 769 (observing that the presumption of correctness "applies to factual determinations made by state courts, whether the court be a trial court or an appellate court").

Hinton has not shown that the state court's decision was objectively unreasonable or that he is entitled to relief under clearly established federal law.  Therefore, Hinton is not entitled to federal habeas corpus relief on this claim.

## C.   The claim that Hinton was denied due process at trial because the prosecutor engaged in misconduct by presenting false testimony

Hinton argues that he was denied due process at trial when the prosecutor presented false testimony.[48]  In support of this claim, Hinton points to discrepancies between the testimony of the assistant medical examiner, Dr. Condron, and the jailhouse informant, Bridges, about the victim's gunshot wound to the back being the fatal shot.[49]   Hinton claims that Bridges' testimony

---

[48]See id. at 13 (Ground One).

[49]Id.

controverts that of Dr. Condron because Bridges testified that Hinton told him that he shot the victim in the abdomen or stomach area while Dr. Condron testified that the fatal gunshot was to the victim's back.[50]

The Supreme Court has held that "a State may not knowingly use false evidence, including false testimony, to obtain a tainted conviction[.]" Napue v. People of the State of Illinois, 79 S. Ct. 1173, 1177 (1959). The prosecution denies a criminal defendant due process when it knowingly presents false testimony at trial or allows untrue testimony to go uncorrected. See Giglio v. United States, 92 S. Ct. 763, 766 (1972); see also Moody v. Johnson, 139 F.3d 477, 484 (5th Cir. 1998) ("It is well settled that the State is not permitted to present false evidence or allow the presentation of false evidence to go uncorrected.") (citations omitted). To demonstrate a constitutional violation in this context a defendant must show that "(1) the evidence was false, (2) the evidence was material, and (3) the prosecution knew that the evidence was false." Nobles v. Johnson, 127 F.3d 409, 415 (5th Cir. 1997) (citing Giglio, 92 S. Ct. at 765-66) (citation omitted). This requires a defendant to show that the state introduced "specific misleading evidence important to the prosecution's case in chief." Donnelly v. DeChristoforo, 94 S. Ct. 1868, 1873 (1974). The court has reviewed the testimony of both Dr. Condron and Bridges. Dr. Condron testified that the fatal shot entered the

---

[50]Id.

victim's body from the rear.[51]   Bridges testified that Hinton told
him that after he shot the victim in the leg, "he stood over him
and shot him in the abdomen or stomach area."[52]   Contradictory trial
testimony does not establish perjury; instead, it "merely
establishes a credibility question for the jury."  See Koch, 907
F.2d at 531 (citing Little, 848 F.2d at 76).   Neither does Hinton
demonstrate that the prosecutor knew that either of the witnesses'
testimony was false.   Hinton is not entitled to relief on this
claim.

**D.   Claims of Ineffective Assistance of Counsel**

Hinton contends that he is entitled to relief from his
conviction because he was denied effective assistance of counsel
during his trial and direct appeal.   Claims for ineffective
assistance of counsel are governed by the clearly established
standard announced in Strickland v. Washington, 104 S. Ct. 2052
(1984).   To prevail under the Strickland standard a criminal
defendant must demonstrate (1) that his counsel's performance was
deficient and (2) that the deficient performance resulted in
prejudice.  Id. at 2064.  "Unless a defendant makes both showings,
it cannot be said that the conviction . . . resulted from a
breakdown in the adversary process that renders the result
unreliable."  Id.

---

[51]Trial Transcript, Testimony of Michael Condron, Docket Entry
No. 34-27, pp. 22, 26.

[52]Trial Transcript, Testimony of Brandon Bridges, Docket Entry
No. 34-28, pp. 75-76.

To satisfy the deficient-performance prong, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. This is a "highly deferential" inquiry that requires "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 2065. "It is only when the lawyer's errors were so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment that Strickland's first prong is satisfied." Buck v. Davis, 137 S. Ct. 759, 775 (2017) (internal quotation marks and citation omitted).

To satisfy the prejudice prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 104 S. Ct. at 2068. A defendant must "affirmatively prove prejudice." Id. at 2067. A habeas petitioner cannot satisfy the second prong of Strickland with mere speculation and conjecture. See Bradford v. Whitley, 953 F.2d 1008, 1012 (5th Cir. 1992). Conclusory allegations are insufficient to demonstrate either deficient performance or actual prejudice. See Day v. Quarterman, 566 F.3d 527, 540-41 (5th Cir. 2009).

Where an ineffective-assistance claim was rejected by the state court, the Supreme Court has clarified that the issue on federal habeas review is not whether "the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable — a substantially

-36-

higher threshold." Knowles v. Mirzayance, 129 S. Ct. 1411, 1420 (2009) (internal quotation marks and citation omitted). When applied in tandem with the highly deferential standard found in 28 U.S.C. § 2254(d), review of ineffective-assistance claims is "doubly deferential" on habeas corpus review. Id. at 1413; see also Richter, 131 S. Ct. at 788 (emphasizing that the standards created by Strickland and § 2254(d) are both "highly deferential," and "doubly so" when applied in tandem) (internal quotation marks and citations omitted); Beatty v. Stephens, 759 F.3d 455, 463 (5th Cir. 2014) (same). Hinton does not show that his counsel's performance was ineffective under the doubly deferential standard for reasons discussed below.

> 1. Failure to request a jury instruction on "Concurrent Causation" and failure to request a jury instruction on the lesser-included offense of aggravated assault

Hinton argues that trial counsel was deficient for failing to request a jury instruction on causation as defined by section 6.04(a) of the Texas Penal Code.[53] Hinton argues that several pieces of evidence at trial supported Terrell Robinson, the victim's son, as firing the gun that fatally shot the victim.[54] He asserts that because the evidence at trial supported that a bullet from the gun Robinson was firing could have shot the victim,

---

[53]Original Petition, Docket Entry No. 1, pp. 15-17 (Ground Five).

[54]Id.

counsel was deficient for not requesting a jury instruction on concurrent causation.[55]    Hinton also argues that trial counsel performed deficiently by failing to request that the lesser-included charge of aggravated assault be included in the jury instructions.[56] Hinton claims that the evidence supported a finding that the victim was shot by someone other than him.[57]

Section 6.04(a) of the Texas Penal Code provides that "[a] person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient." Texas Penal Code § 6.04(a).

To be eligible for a lesser-included offense instruction, the defense needs to show (1) that the lesser offense is included within the proof necessary to establish the offense charged; and (2) that there is some evidence in the record that would permit the jury to find the defendant guilty of only the lesser offense. See Chavez v. State, 666 S.W.3d 772, 776 (Tex. Crim. App. 2023); Richards v. Quarterman, 566 F.3d 553, 568 (5th Cir. 2009).

Hinton presented these claims in his State Habeas Application. As part of the state habeas proceeding, the state district court judge instructed Hinton's trial attorneys to respond to Hinton's

---

[55]Id.

[56]Id. at 18 (Ground Nine).

[57]Id.

allegations of ineffective assistance of counsel.   Ms. Long explained in her affidavit, reproduced below in relevant part, that the defense trial strategy was to highlight the victim's threats to Hinton and Hinton's self-defense from the dog attack.[58]   Ms. Long stated that it was her "opinion [that] the trial jury charge was appropriate and [the] Court instructed the jury in a manner that supported our plan for the defense of Mr. Hinton."[59]   Long also explains that it was not part of the defense trial strategy to request a "concurrent causation" jury instruction and that there was no evidence presented at trial to support a "concurrent causation" jury charge:

> The trial occurred and the trial strategy was to try to show evidence of self defense for attack from the dog of the victim and the victim's hostile comments and t[h]reats to the defendant.   We also intended to show motivation and lies on the part of the inmate that testified about what the client told him.   We did not have any plans to present evidence of concurrent causation but we did discuss other available strategies in our trial plan.   Evidently the court in its charge to the jury properly charged the jury based on the evidence presented to them.   In my opinion there was no evidence presented to support a Texas Penal Code, Section 6.04(a) jury charge.   The request for a "concurrent causation" charge was not in the proposed trial strategy.[60]

Based on the record before it, the state trial court rejected Hinton's claim that his attorneys provided ineffective assistance for failing to request jury instructions on concurrent causation or on the lesser-included offense of aggravated assault:

---

[58]Long Affidavit, Docket Entry No. 33-34, p. 77.

[59]Id.

[60]Id.

-39-

**FINDINGS OF FACT**

42.  The applicant claims trial counsel was ineffective for failing to request a jury instruction on concurrent causation.

43.  To warrant a concurrent causation instruction, the record must show evidence that the concurrent cause was clearly sufficient to produce the result and the conduct of the applicant was clearly insufficient.  Tex. Penal Code Ann. §6.04(a).

44.  The trial court finds, based on Tara N. Long's affidavit, that in Long's opinion, there was no evidence presented to support a jury instruction on concurrent causation.  *State's Writ Exhibit "B", Affidavit of Tara N. Long.*

45.  The applicant fails to show that his conduct was clearly insufficient to cause the complainant's death.

46.  The applicant fails to show that the evidence supported a jury instruction on concurrent causation.

47.  The applicant claims trial counsel was ineffective for failing to request a jury instruction on the lesser-included offense aggravated assault.

48.  The applicant fails to show there is evidence in the record that would permit a jury to rationally find that if the applicant was guilty, he was only guilty of the lesser-included offense.[61]

**CONCLUSIONS OF LAW**

13.  Because the applicant fails to show the evidence supports a jury instruction on concurrent causation, he fails to show trial counsel was ineffective for failing to request a jury instruction on concurrent causation. *Strickland,* 466 U.S. at 687.

14.  A defendant is entitled to an instruction on a lesser-included offense where the proof for the offense charged includes the proof necessary to establish the lesser-included offense, and there is evidence in the record that would permit a jury to rationally find that

---

[61]Findings and Conclusions, Docket Entry No. 33–34, pp. 35–36.

-40-

> if the defendant is guilty, he is only guilty of the lesser-included offense. *Bignall v. State,* 887 S.W.2d 21, 23 (Tex. Crim. App. 1994).

> 15. Because the applicant fails to show there is evidence in the record that would permit a jury to rationally find that he was only guilty of aggravated assault, the applicant fails to show trial counsel was ineffective for failing to request a jury instruction on aggravated assault. *Strickland,* 466 U.S. at 687.[62]

At trial, the assistant medical examiner testified that the victim's cause of death was multiple gunshot wounds.[63] The medical examiner testified that only one of the gunshot wounds was "immediately fatal" because it pierced the victim's aorta.[64] The medical examiner also testified that the bullet that caused the fatal wound entered the victim's body from the rear.[65] Floyd Albert, an eyewitness, testified that Hinton was standing behind the victim when Hinton began shooting.[66] Robert Washington, another eyewitness, testified that Hinton shot the victim in the chest.[67]

The jury heard evidence that four guns were present at the scene of the incident: (1) Hinton's .380 caliber handgun; (2) a rifle belonging to the victim; (3) a Smith and Wesson .38 Special;

---

[62]Id. at 40–41.

[63]Trial Transcript, Testimony of Dr. Michael Condron, Docket Entry No. 34-27, p. 35 lines 6-10.

[64]Id. at 40 lines 17-22, p. 45 lines 10-13.

[65]Id. at 27 lines 3-11.

[66]Id., Testimony of Floyd Albert, Docket Entry No. 34-27, p. 221 line 25 – p. 222 lines 1-6.

[67]Id., Testimony of Robert Washington, Docket Entry No. 34-27, p. 159 lines 22-24; p. 160 lines 16-21; p. 161 lines 8-19.

and (4) a Glock .9mm that the victim's son, Terrell Robinson, fired.[68]  Officer Graves Johnson — a police officer who documented the crime scene — testified that he recovered fired casings from the .9mm and .380.[69]  No evidence was presented at trial that the rifle had been fired.[70]  Officer Juan Rincon, one of the police officers who first responded to the scene, testified that a .38 Special was found in the victim's pants; and Officer Johnson later testified there were six unfired rounds in it.[71]  The State's ballistics expert testified that the .38 Special did not function properly at first when she tried to test fire it.[72]  Several witnesses testified that Robinson was not present when Hinton began firing the handgun.[73]  As explained by Ms. Long in her affidavit, the evidence at trial did not support that Hinton was guilty of

---

[68]See, e.g., Trial Transcript, Testimony of Juan Rincon, Docket Entry No. 34-25, pp. 89–90, 92, 109–110; Trial Transcript, Testimony of Graves Johnson, Docket Entry No. 34-25, pp. 140–142, 144–147, 151–152; Trial Transcript, Testimony of Tiffany Edwards, Docket Entry No. 34-25, pp. 220–221; Trial Transcript, Testimony of Floyd Albert, Docket Entry No. 34-27, p. 224 lines 3–5, 20.

[69]Trial Transcript, Testimony of Graves Johnson, Docket Entry No. 34-25, p. 171.

[70]See id. at 171, 189.

[71]Trial Transcript, Testimony of Juan Rincon, Docket Entry No. 34-25, pp. 89–90, 92; Trial Transcript, Testimony of Graves Johnson, Docket Entry No. 34-25, p. 171.

[72]Trial Transcript, Testimony of Tammy Lyons, Docket Entry No. 34-27, pp. 62–63.

[73]See Trial Transcript, Testimony of Cheyenne Johnson, Docket Entry No. 34-28, pp. 33–34; Trial Transcript, Testimony of Robert Washington, Docket Entry No. 34-27, pp. 173–174; Trial Transcript, Testimony of Floyd Albert, Docket Entry No. 34-27, pp. 232.

only aggravated assault or that Hinton's conduct was clearly insufficient to cause the victim's death. Instead, as just described, there were several pieces of evidence in the record that would permit the jury to find that Hinton fired the fatal shot from a .380 handgun that killed the victim.

Counsel's decision to pursue a defense based on discrediting the jailhouse informant and a theory of self-defense is a matter of trial strategy that is entitled to substantial deference. See Strickland, 104 S. Ct. at 2065. "[A] conscious and informed decision on trial tactics and strategy cannot be the basis of constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." Pape v. Thaler, 645 F.3d 281, 291 (5th Cir. 2011) (internal quotation marks and citation omitted). Additionally, Hinton fails to overcome the trial strategy presumption of Strickland in that his attorney did not request a "concurrent causation" charge because she believed that there was no evidence to support such a charge. See Clark v. Thaler, 673 F.3d 410, 421 (5th Cir. 2012) (explaining that federal courts must "affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did") (cleaned up) (internal quotation marks omitted). Hinton has failed to show that the state court's determination was contrary to or involved an unreasonable application of Strickland or was an unreasonable determination of the facts based on the evidence in the record. Hinton is not entitled to relief on this claim.

-43-

2.  <u>Allowed the prosecutor to present privileged testimony from Hinton's wife</u>

Hinton asserts that counsel provided ineffective assistance by "allowing" the prosecutor to use the privileged testimony of his wife, April Page, during the trial.[74]

Rule 504 of the Texas Rules of Evidence codifies the spousal privilege as it applies in criminal cases. In relevant part, the statute provides:

> (b)  Privilege Not to Testify in a Criminal Case.
>
>> (1)  *General Rule*. In a criminal case, an accused's spouse has a privilege not to be called to testify for the state. But this rule neither prohibits a spouse from testifying voluntarily for the state nor gives a spouse a privilege to refuse to be called to testify for the accused.
>
> . . .
>
>> (3)  *Who May Claim*. The privilege not to testify may be claimed by the accused's spouse or the spouse's guardian or representative, but not by the accused.

Rule 504 of the Texas Rules of Evidence.

Hinton presented this claim in his State Habeas Application. As part of the state habeas proceeding, the state district court judge instructed Hinton's attorneys to respond to Hinton's claims.[75]

---

[74]Original Petition, Docket Entry No. 1, p. 17.

[75]<u>See</u> State's Proposed Order for Filing Affidavit Following Remand, Docket Entry No. 33-11, pp. 2-4 (ordering Charles Brown to respond to questions from the court); State's Proposed Order for Filing Affidavit Following Remand, Docket Entry No. 33-17, pp. 7-10 (ordering Kurt Wentz to respond to questions from the court); State's Proposed Order for Filing Affidavit Following Remand, Docket Entry No. 33-17, pp. 12-14 (ordering Tara Long to respond to questions from the court); State's Proposed Order for Filing Affidavit Following Remand, Docket Entry No. 33-17, pp. 20-22 (ordering Sonya Chandler-Anderson to respond to questions from the court).

In response to Hinton's claim that counsel was deficient for
allowing the prosecution to call the applicant's wife, Mr. Wentz
explained in his affidavit why he did not raise the issue on direct
appeal:

> The spousal privilege to which the appellant apparently
> alludes belongs to the witness spouse, not the defendant.
> See TRE 504. April Paige never asserted that privilege
> at trial. Moreover, what remains of the spousal
> privilege under TRE 504 specifically accepts communica-
> tions made in the furtherance of a crime or fraud. In
> addition, while "TRE 504 generally" gives a spouse a
> privilege not to testify for the state, it "neither
> prohibits a spouse from testifying for the state nor
> gives the spouse a privilege to be called to testify for
> the accused[.]" April Paige never asserted any spousal
> privilege.
>
> The record indicates April Paige's initial refusal to
> testify was based on her 5th Amendments right not to
> testify, not spousal privilege. See Volume 9. The
> applicant knew this when he waived his right to claim a
> conflict of interest with Eugene Newsom, his first
> attorney, who came to represent Ms. Paige at the time of
> trial. It was Newsom who negotiated Ms. Paige's immunity
> with the DA which enabled her to testify against the
> applicant and help secure his conviction. See Volume
> 6.[76]

The Texas Court of Criminal Appeals summarily rejected this claim
on June 27, 2018, as part of the state habeas proceeding.[77]

Hinton's trial counsel could not claim the privilege on behalf
of Hinton because Ms. Page — as the spouse of the accused in a
criminal case — is the holder of the spousal privilege, not Hinton
as the accused. <u>See</u> Texas Rules of Evidence, Rule 504(b)(3).
Ms. Page voluntarily testified at trial in exchange for an immunity

---

[76]Wentz Affidavit, Docket Entry No. 33-34, pp. 45-46.

[77]<u>See Ex parte Hinton,</u> 2018 WL 3133970, at *1, n.1.

-45-

agreement she signed with the State.[78]  Any objection by Hinton's
trial counsel to Ms. Page testifying based on spousal immunity
would have been without merit.   Counsel is not deficient for
failing to make a futile or meritless objection.   See Koch, 907
F.2d at 527 "[The Fifth Circuit] has made clear that counsel is not
required to make futile motions or objections.") (citing Murray v.
Maggio, 736 F.2d 279, 283 (5th Cir. 1984) (per curiam)); United
States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's
failure to raise a meritless argument . . . cannot form the basis
of a successful ineffective assistance of counsel claim[.]").
Hinton is not entitled to relief on this claim.

3.  Failure to suppress testimony from jailhouse informant,
     Brandon Bridges

Hinton asserts that counsel was deficient for failing to
suppress the testimony of Brandon Bridges, a jailhouse informant,
"who the record reveals [that Bridges] initiated the conversations
with [Hinton], designed deliberately to elicit incriminating
evidence."[79]  Hinton goes on to argue that:

> Any motive Bridges had operating on his mind during his
> testimony, which is material to the effect of, on
> his credibility would have also been uncovered. Allowing the
> jury to hear Bridges testimony affected the fairness to
> petitioner. But, a Motion to Suppress, and a Motion in
> Limine, would have been the proper avenue to this
> instant.[80]

---

[78]See Grant of Use Immunity, Docket Entry No. 33-9, p. 4; Trial
Transcript, Testimony of April Page, Docket Entry No. 34-27,
pp. 90-91.

[79]Original Petition, Docket Entry No. 1, p. 17.

[80]Id.

Bridges was Hinton's cell mate for a period of time at the Harris County Jail.[81]   At trial Bridges testified that Hinton confessed to him that he shot the victim and two other men the night of the incident.[82]

Hinton does not provide any argument as to why Bridges' testimony should have been suppressed.   To the extent Hinton is arguing that his attorney should have impeached Bridges at trial, Ms. Long did in fact impeach Bridges' testimony during cross-examination by asking about his motive for testifying, his membership in a gang, the crimes that were pending against him, and about whether he learned about the victim being shot from reading the local news.[83]   Hinton does not assert that any certain aspect of Ms. Long's cross-examination of Bridges was deficient or that the result of the proceeding would have been different had Ms. Long questioned Bridges differently.

Absent Hinton explaining why his attorney was deficient for failing to argue that Bridges' testimony should have been suppressed, his conclusory allegations are insufficient to state a claim.   See Koch, 907 F.2d at 530 (holding that the petitioner's conclusory allegations failed to establish a valid ineffective assistance of counsel claim).   Hinton is not entitled to relief on this claim.

---

[81]Trial Transcript, Testimony of Brandon Bridges, Docket Entry No. 34-28, pp. 64-65.

[82]Id. at 75-76.

[83]Id. at 82-84, 86-88, 97-99.

4.    Failure to interview "Moeshe['s] sister's Boyfriend" and failure to subpoena the victim's son, Terrell Robinson, as a material witness

Hinton argues that his attorneys provided ineffective assistance by not interviewing "Moeshe['s] sister's Boyfriend."[84] Hinton asserts that Moeshe['s] sister's boyfriend would have testified in favor of the defense at trial to the following:

> [T]he pushing of [Hinton], Jones being armed with [a] firearm during the initial argument, the surrounding of [Hinton], the multiples that accompanied Jones in seeking his explanation, about [Hinton] being bit by Jones' dog, [Hinton]'s attitude, his motive for wanting to shoot the Pit-bull Dog and not to harm Jones or any persons being.[85]

He also argues that his counsel failed to subpoena the victim's son, Terrell Robinson, as a witness.[86] Hinton argues that "[the] Prosecutor's opening statement contained Jen Falk accussing [sic] then testifying for Terrell Robinson as being another active shooter, and to him firing the .9mm (RR 7:23)."[87] Hinton claims that when he asked Ms. Long why Robinson was not testifying at trial, Ms. Long replied that Robinson was being uncooperative and rude with the district attorney and with the investigation.[88]

A defendant who alleges a failure to investigate on the part of his counsel "'must allege with specificity what the investigation would have revealed and how it would have altered the

---

[84]Original Petition, Docket Entry No. 1, pp. 17–18.

[85]Id. at 18.

[86]Id. at 19 (Ground Eleven).

[87]Id.

[88]Id.

outcome of the trial.'"  <u>United States v. Bernard</u>, 762 F.3d 467, 472 (5th Cir. 2014) (citation omitted) (emphasis in original); <u>see also Miller v. Dretke</u>, 420 F.3d 356, 361 (5th Cir. 2005).  Further, "[c]laims that counsel failed to call witnesses are not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain." <u>Woodfox v. Cain,</u> 609 F.3d 774, 808 (5th Cir. 2010).  "To prevail on an ineffective assistance [of counsel] claim based upon uncalled witnesses, an applicant must name the witness, demonstrate that the witness would have testified, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable." <u>Gregory v. Thaler</u>, 601 F.3d 347, 352 (5th Cir. 2010); <u>Alexander v. McCotter</u>, 775 F.2d 595, 602 (5th Cir. 1985) ("In order for the appellant to demonstrate the requisite <u>Strickland</u> prejudice, the appellant must show not only that this testimony would have been favorable, but also that the witness would have testified at trial.").

The state trial court considered these claims on collateral review.  After considering affidavits from Hinton's trial attorneys and other evidence in the record, the state trial court rejected the claims.[89]

Hinton alleges that counsel interviewing "Moeshe['s] sister's boyfriend" would have resulted in "Moeshe['s] sister's boyfriend" testifying at trial about Hinton being pushed, the victim being

---

[89]<u>See</u> Findings and Conclusions, Docket Entry No. 33-34, pp. 34-35, 39-40.

armed with a gun during the initial argument, Hinton being surrounded, Hinton being bit by the victim's dog, Hinton's attitude, Hinton's motive for wanting to shoot the victim's dog and to not harm the victim or any other person.[90] Even assuming that "Moeshe['s] sister's boyfriend" was present during the incident and would have been permitted to testify as to events he actually observed, he would not have been permitted to testify as to Hinton's motive for wanting to shoot the victim's dog and to not harm the victim or anyone else. More importantly, Hinton does not identify this witness by name, does not claim that he was available to testify, and does not explain how "Moeshe['s] sister's boyfriend" testifying would have altered the outcome of the trial.

As to his claim that counsel performed deficiently by not issuing a subpoena for Robinson to testify as a witness at trial, Hinton has not provided a statement from Robinson indicating what he would have testified about or that he would have testified favorably in Hinton's defense if called as a witness at trial. When the only evidence of a missing witness's testimony is from the petitioner, courts in the Fifth Circuit view claims of ineffective assistance "with great caution." Sayre v. Anderson, 238 F.3d 631, 636 (5th Cir. 2001). "Ordinarily, a defendant's failure to present some evidence from the uncalled witness regarding that witness's potential testimony and willingness to testify would be fatal to an ineffective assistance of counsel claim." Harrison v. Quarterman,

---

[90]See Original Petition, Docket Entry No. 1, p. 18.

-50-

496 F.3d 419, 428 (5th Cir. 2007) (emphasis in original); see also Sayre, 238 F.3d at 636.

Absent a showing that "Moeshe['s] sister's boyfriend" or Robinson were available to testify at trial and would have testified favorably in his defense, Hinton does not demonstrate that the state court's determination was contrary to, or involved an unreasonable application of Strickland or was an unreasonable determination of the facts based on the evidence in the record. Hinton is not entitled to relief on these claims.

### 5.  Failure to object to language in the jury instructions regarding the state's burden of proof

Hinton argues that counsel provided ineffective assistance by failing to "challenge/raise argument concerning the disjunctive issues within the jury charge.  []Counsel failed to challenge impermissible jury charge that by context unlawfully lowered the states burden of proof or alternatively impaired jury ability to find guilty of lesser included offense of aggravated assault."[91]

To the extent that this claim can be construed as challenging counsel's alleged failure to object to the jury charge, Hinton provides no argument in support of this claim.  Nor does he attempt to explain how he suffered prejudice from counsel's alleged deficient performance.  Such conclusory allegations "do not raise a constitutional issue in a federal habeas proceeding."  Miller, 200 F.3d at 282.  Hinton is not entitled to relief on this claim.

_____

[91]Amended Petition, Docket Entry No. 40, p. 6.

-51-

6.   <u>Failure to retain an independent ballistics expert and failure to obtain an independent expert to refute the state's forensic evidence about the victim's gunshot injuries</u>

Hinton asserts that counsel performed deficiently when they failed to retain expert witnesses.[92]  In particular, he argues that counsel should have retained an independent ballistics expert to challenge the State's ballistic evidence regarding gunshot wound number 5 and gunshot wound number 1.[93]  He also argues that an independent expert could have challenged the evidence that he fired the fatal shot.[94]

Claims of uncalled witnesses "are disfavored [on federal habeas corpus review], especially if the claim is unsupported by evidence indicating the witnesses's willingness to testify and the substance of the proposed testimony."  <u>Gregory</u>, 601 F.3d at 352 (citations omitted).  As discussed, to demonstrate the required <u>Strickland</u> prejudice in this context, a petitioner "must show not only that [the] testimony [of an uncalled witness] would have been favorable, but also that the witness would have testified at trial."  <u>Evans v. Cockrell</u>, 285 F.3d 370, 377 (5th Cir. 2002) (quoting <u>Alexander</u>, 775 F.2d at 602).  "A decision by counsel not to hire an expert is well 'within the realm of trial strategy,' to which [the] Court must defer."  <u>Cox v. Davis</u>, Civil Action No. 3:18-0029, 2019 WL 13440327, at *15 (S.D. Tex. Sept. 20, 2019) (citing <u>Yohey v. Collins</u>, 985 F.2d 222, 228 (5th Cir. 1993)).

---

[92]<u>Id.</u> at 6-7 (Grounds Thirteen and Fourteen).

[93]<u>Id.</u> at 6.

[94]<u>Id.</u> at 7.

Hinton presented this claim in his State Habeas Application. The state habeas court found that Hinton failed to show that counsel was ineffective for failing to hire or call an expert witness because Hinton failed to show that an expert was available and that their testimony would have benefitted the defense.[95]

Hinton has not provided an expert report or alleged with specificity what results scientific tests would have yielded. See Evans v. Cockrell, 285 F.3d 370, 377 (5th Cir. 2002) (finding ineffective assistance of counsel claim based on failing to call a scientific expert to testify without merit when the petitioner did not "present any evidence or allegations concerning what the expert would have stated, or what results the scientific tests would have yielded"). Hinton does not otherwise show that the outcome of the case would have been altered if counsel had retained a defense expert. See Anderson v. Collins, 18 F.3d 1208, 1221 (5th Cir. 1994). Hinton has failed to show that the state courts' determination was contrary to, or involved an unreasonable application of Strickland or that the decision involved an unreasonable determination of the facts based on the evidence in the record. No basis for habeas relief is shown, and the respondent is entitled to dismissal of this claim.

7.  Failure to argue mitigating evidence of manslaughter during the punishment phase of trial

Hinton claims trial counsel performed deficiently at the punishment phase when counsel failed to argue "the Mitigating/

---

[95]Findings and Conclusions, Docket Entry No. 33-34, p. 37 ¶¶ 56-57; p. 40 ¶ 12.

-53-

Evidence of Manslaughter at [the] Punishment Phase."[96]   Hinton points to several examples in the trial record where witnesses testified that they heard Hinton say that he wanted to shoot the dog.[97]

To the extent Hinton is arguing that counsel should have focused on Hinton's intent to shoot the dog, such argument would not have been a successful trial strategy.   In relevant part, a person commits murder in Texas if the person: (1) intentionally or knowingly causes the death of an individual; or (2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual.   Tex. Penal Code § 19.02(b)(1) and (2).

As discussed earlier in this Opinion, at least one witness at trial testified to Hinton shooting the victim.   Two other witnesses — Floyd Albert and Cheyenne Johnson — testified that they themselves were shot by Hinton.[98]   A trial strategy focusing on Hinton's alleged intent to only shoot the dog would not have been successful.   Hinton has not met his burden to show that counsel was deficient for failing to argue that he should only be found guilty of manslaughter based on his alleged intent to only shoot the dog. He is not entitled to relief on this claim.

---

[96]See Original Petition, Docket Entry No. 1, p. 19.

[97]Id.

[98]Trial Transcript, Testimony of Floyd Albert, Docket Entry No. 34-27, pp. 222–223; Trial Transcript, Testimony of Cheyenne Johnson, Docket Entry No. 34-27, p. 270.

8.    Ineffective Assistance of Appellate Counsel

Hinton contends that he is entitled to relief from his murder conviction because his appellate counsel did not file a motion for a new trial.[99]    He also alleges that appellate counsel was unresponsive and uncommunicative.[100]

To establish that counsel's performance was deficient in the context of an appeal, the petitioner must show that his attorney was objectively unreasonable "in failing to find arguable issues to appeal — that is, that counsel unreasonably failed to discover non-frivolous issues and to file a merits brief raising them." Smith v. Robbins, 120 S. Ct. 746, 764 (2000).    However, "[o]n appeal, effective assistance of counsel does not mean counsel who will raise every nonfrivolous ground of appeal available." Green v. Johnson, 160 F.3d 1029, 1043 (5th Cir. 1998).    If the petitioner succeeds in showing that his attorney was deficient, he must then establish actual prejudice by demonstrating a "reasonable probability" that, but for his counsel's deficient performance, "he would have prevailed on his appeal." Smith, 120 S. Ct. at 764.

Hinton presented this claim in his State Habeas Application.[101] The trial court judge ordered Mr. Wentz to file an affidavit responding to Hinton's claim that he provided ineffective

_____

[99]See Original Petition, Docket Entry No. 1, pp. 13-14.

[100]Id. at 14.

[101]See Original State Habeas Application, Docket Entry No. 33-1, pp. 13-14, 33-34.

assistance on appeal.[102]   Mr. Wentz then submitted the following

affidavit in response to the state district court judge's questions

regarding his representation of Hinton:

> My name is Kurt B. Wentz.  I am over eighteen years of
> age, of sound min[d], capable of making this affidavit
> and personally acquainted with the facts stated.
>
> I was appointed to represent the applicant on direct
> appeal.
>
> Unlike trial counsel the file of an appellate attorney is
> quite minimal and consists of the research accumulated in
> preparing the appellant's brief and PDR.  The substance
> of my research is found in the brief and PDR.   The
> research materials - copies of cases, etc. - were
> disposed of once the brief and PDR were filed.   The
> applicant has acknowledged receiving copies of each.
>
> A motion for new trial is to be filed within thirty days
> of the conclusion of the trial.   TRAP 21.4.   The
> appellate record had not been completed by that date so
> I did not know if there were any record reasons for a
> motion for a new trial.  In addition I was never advised
> by anyone that there was any legitimate basis for filing
> a motion for a new trial during that thirty day interval.
>
> The applicant's letters to me, Exhibits 1, 2, 3, and 4
> which are Appendix 25, 26, 28, and 29 to his writ makes
> no such request.  In fact, they were sent after the time
> for filing a motion for new trial. See Exhibits 1, 2, 3,
> and 4 which are attached.
>
> As no one suggested that I file a motion for new trial,
> I was not aware of the five specific areas of concern
> innumerated [sic] in Paragraph 5 of the court's order.
> After reviewing the Appellate record I found no basis for
> raising the first three areas of concern.  However, I did
> address the sufficiency of the evidence and the trial
> court's self-defense charge in my brief without the
> benefit of a new trial.
>
> In addressing the questions posed in Paragraphs 6, 7, and
> 8 of the court's order the record indicates that trial

---

[102]State's Proposed Order for Filing Affidavit Following
Remand, Docket Entry No. 33-17, pp. 7-10 (ordering Kurt Wentz to
respond to questions from the court).

counsel was informed of the Brady/Gunter information at least by February 1, 2014 when the trial court considered Ms. Long's motion for continuance. She was given a new copy of the offense report on that date and informed how to obtain further information on the Brady/Gunter issue. The trial court continued the applicant's case until February 8, 2014. This was the third continuance granted to trial counsel.

As the record indicates neither the state nor defense called Gunter as a witness. Nor did the trial court indicate that any of the information it received warranted a continuance. Trial counsel also failed to have the court rule on the motion for continuance before commencing trial on February 8th.

It is unlikely Gunter's alleged bigamy would have been relevant even if he was called.

The spousal privilege to which the appellant apparently alludes belongs to the witness spouse, not the defendant. See TRE 504. April Paige never asserted that privilege at trial. Moreover, what remains of the spousal privilege under TRE 504 specifically accepts communications made in the furtherance of a crime or fraud. In addition, while "TRE 504 generally" gives a spouse a privilege not to testify for the state, it "neither prohibits a spouse from testifying for the state nor gives the spouse a privilege to be called to testify for the accused[.]" April Paige never asserted any spousal privilege.

The record indicates April Paige's initial refusal to testify was based on her 5th Amendments right not to testify, not spousal privilege. See Volume 9. The applicant knew this when he waived his right to claim a conflict of interest with Eugene Newsom, his first attorney, who came to represent Ms. Paige at the time of trial. It was Newsom who negotiated Ms. Paige's immunity with the DA which enabled her to testify against the applicant and help secure his conviction. See Volume 6. Whether trial counsel "properly impeached Bridge's is a vague inquiry at best. What do "proper" and "impeach" mean in the context of this inquiry?

Trial counsel properly impeached Bridges with his prior convictions. She also impeached him with prior inconsistent statements about why he was now coming forth as a witness. She also impeached Bridges with a Houston Chronicle article he referred to as the basis of some of his information about the case.

-57-

Trial counsel also got Bridges to confirm he had three aggravated robbery cases and a pending UUMV. She also had Bridges confirm he was formerly a Blood gang member and had initially asked the DA for some consideration in providing information about the applicant. Trial counsel's cross and re-cross of Bridges was just as lengthy as the prosecutor's direct and redirect. Thus, trial counsel impeached Bridges on multiple occasions in different ways.

One might question counsel's "applauding" Bridges testimony and calling it "the best theater I have ever heard" at the outset of her cross-examination; however, that is a matter of style and strategy to which counsel is entitled and scarcely the subject of an IOC claim on direct appeal.

As the attached opinion, Exhibit 5, indicates I raised the issue of whether the trial court properly charged the jury of the law of self-defense as well as whether there was significant evidence to find the applicant guilty of murder and not acting in self-defense. Unfortunately the Court of Appeals rejected these claims. The Court of Appeals also rejected my claim that the trial court erred in prohibiting trial counsel's attempt to impeach Robert Washington with an old murder conviction. See Exhibit 5.

It is true that I had no communication with the applicant during the period of time a motion for a new trial might have been filed. However, this did not impair my ability to raise meritorious potential points of error in my brief.

The applicant's claims of IOC for failing to "properly impeach" Bridges and object to spousal testimony are dubious at best. Gunter did not testify for the state and trial counsel did not attempt to call him as a witness. Gunter's partner, Burton, was called by the State and supplied much of the information that Gunter would have. Gunter's alleged bigamy did not relate to any of the parties in the applicant's case.[103]

In rejecting this claim during Hinton's state habeas proceeding, the state habeas court found Wentz's affidavit to be

_____

[103]Wentz Affidavit, Docket Entry No. 33-34, pp. 44-47.

-58-

credible.[104]  In particular, the judge made the following findings and conclusions:

### FINDINGS OF FACT

58.   The applicant claims he was denied the effective assistance of appellate counsel due to appellate counsel's failure to file a motion for new trial to preserve various issues for direct appeal. *Applicant's Writ Application at 8-9.*

59.   The applicant claims the motion for new trial would have consisted of the following grounds:

   a.   Brady information concerning a lead detective, trial counsel didn't have adequate time to locate Sgt. Gunter;

   b.   Ineffective assistance of counsel for failing to object to allowing privileged testimony by the Prosecutor;

   c.   Ineffective assistance of counsel for failing to properly impeach Brandon Bridges' testimony;

   d.   Prosecutorial misconduct knowing or should have known Bridges was testifying to perjured testimony;

   e.   Failure for the trial court to apply the law to the facts, to allow the jury to make a fair and confident verdict to a hypothetically correct jury charge; and

   f.   Evidence was not sufficient to support the verdict. *Applicant's Writ at 9.*

60.   The trial court finds, based on the affidavit of Kurt Wentz, that the appellate record was not complete at the time the expiration to file a motion for new trial had passed, therefore Wentz did not know if there were any record reasons for a motion for new trial.

61.   The trial court finds, based on the affidavit of Kurt Wentz, that Wentz was never advised by anyone

---

[104]Findings and Conclusions, Docket Entry No. 33-34, p. 33 ¶ 20.

that there was a legitimate bases for filing a motion for new trial during the 30 day time frame.

62.   The trial court finds, based on the affidavit of Kurt Wentz, that Wentz did not communicate with the applicant during the period of time in which to file a motion for new trial.

63.   The trial court finds, based on the affidavit of Kurt Wentz, that Wentz's failure to communicate with the applicant prior to the expiration of the time to file a motion for new trial did not impair Wentz's ability to raise meritorious points of error on direct appeal.

64.   The applicant fails to show harm as a result of Wentz's failure to file a motion for new trial.

## CONCLUSIONS OF LAW

5.   The Strickland test applies to claims of ineffective assistance of appellate counsel. *Ex parte Jarrett,* 891 S.W.2d 935, 944 (Tex. Crim. App. 1994), *overruled on other grounds, Ex parte Wilson,* 956 S.W.2d 25 (Tex. Crim. App. 1997).

. . .

16.   Because the applicant fails to show harm as a result of appellate counsel's failure to file a motion for new trial, the applicant fails to show appellate counsel was ineffective for failing to file a motion for new trial. *Id.*

17.   Because the applicant fails to show harm as a result of appellate counsel's failure to communicate with the applicant until the deadline for filing a motion for new trial had passed, the applicant fails to show appellate counsel was ineffective for failing to communicate with him until after the deadline had passed. *Id.*

. . .

19.   In all things, the applicant fails to show appellate counsel was ineffective.[105]

---

[105]*Id.* at 37-39, 41.

Hinton has not met his burden to show that other issues briefed on appeal would have been successful or that a motion for a new trial would have been granted. Mr. Wentz explained why he did not file a motion for a new trial, and the state habeas court ultimately concluded that Mr. Wentz did not provide ineffective assistance. The Texas Court of Criminal Appeals expressly relied on these findings, as well as its own independent review of the record, in denying habeas relief.

As to Hinton's assertion that Mr. Wentz was unresponsive and uncommunicative, the Fifth Circuit has held that "appointed counsel prosecuting an appeal on an adequate trial record" is not required to confer with his client about the issues presented on appeal. Hooks v. Roberts, 480 F.2d 1196, 1197 (5th Cir. 1973); see also Raymer v. Stephens, Civil Action No. H-13-1338, 2014 WL 4734971, at *28 (S.D. Tex. Sept. 23, 2014) ("Appellate counsel is not required to consult with his client about the legal issues to be presented on appeal.") (citing Hooks, 480 F.2d at 1197); Cruz-Reyes v. United States, Case No. 1:15-cv-071, 2016 WL 1715339, at *4 (S.D. Tex. Apr. 5, 2016) ("[A]ppellate counsel is not required to confer with a client about the issues presented on appeal, regardless of any preferred practice.") (citing Hooks, 480 F.2d at 1197), report and recommendation adopted by, 2016 WL 1718266 (S.D. Tex. Apr. 27, 2016). Further, "brevity of consultation time with the client does not establish a claim for ineffective assistance of counsel unless a defendant can show what benefit would have resulted from more consultation time." United States v. Bernard, 762 F.3d 467, 478

(5th Cir. 2014) (citing Schwander v. Blackburn, 750 F.2d 494, 499 (5th Cir. 1985)).  Hinton has not met his burden to show what benefit would have resulted from additional consultation time with Mr. Wentz.

The state habeas court found that Hinton failed to meet his burden on his ineffective assistance of counsel claims, and the court denied the claims.  This court must "defer 'both to trial counsel's reasoned performance and then again to the state habeas court's assessment of that performance.'"  Sanchez v. Davis, 936 F.3d 300, 305 (5th Cir. 2019) (citing Rhoades v. Davis, 852 F.3d 422, 434 (5th Cir. 2017)).  Hinton has failed to show that the state court's determination was contrary to, or involved an unreasonable application of, Strickland, or that the decision involved an unreasonable determination of the facts based on the evidence in the record.  Hinton is not entitled to habeas relief on his ineffective assistance of appellate counsel claims.

## IV.  Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order that is adverse to the petitioner.  A certificate of appealability will not issue unless the petitioner makes "'a substantial showing of the denial of a constitutional right,'" 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "'that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" Tennard v. Dretke, 124 S. Ct. 2562, 2569 (2004) (quoting

Slack v. McDaniel, 120 S. Ct. 1595, 1604 (2000)). Under the controlling standard this requires a petitioner to show that "jurists of reason could disagree with the [reviewing] court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Buck, 137 S. Ct. at 773 (internal quotation marks and citation omitted).

After careful review of the pleadings, the record, and the applicable law, the court concludes that reasonable jurists would not find the assessment of the constitutional claims debatable or wrong. Because the petitioner does not demonstrate that his claims could be resolved in a different manner, a certificate of appealability will not issue in this case.

## V.  **Conclusion and Order**

The court **ORDERS** as follows:

1.   The Petition and Amended Petition for a Writ of Habeas Corpus By a Person in State Custody filed under 28 U.S.C. § 2254 by Walter Hinton, Jr. (Docket Entry Nos. 1 and 40) are **DENIED**, and this action will be dismissed with prejudice.

2.   A certificate of appealability is **DENIED**.

The Clerk shall provide a copy of this Memorandum Opinion and Order to the parties.

**SIGNED** at Houston, Texas, on this the 15th day of April, 2025.

_____
SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE

-63-